NO. 22-55560

# IN THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

————————

GILBERT SAUCILLO and JAMES RUDSELL,
on behalf of themselves and the certified class

*Plaintiffs and Appellees*

v.

SWIFT TRANSPORTATION CO. OF ARIZONA, LLC and SWIFT
TRANSPORTATION COMPANY

*Defendants and Appellees*

v.

LAWRENCE PECK and SADASHIV MARES

*Objectors and Appellants*

————————

**APPELLEES SWIFT TRANSPORTATION CO. OF ARIZONA, LLC'S
AND SWIFT TRANSPORTATION COMPANY'S ANSWERING BRIEF**

————————

Appeal from the United States District Court
for the Central District of California
District Court Case 2:15-cv-07920-VAP-KK
The Honorable Virginia A. Phillips

————————

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
Paul S. Cowie, Cal. Bar No. 250131
John D. Ellis, Cal. Bar No. 269221
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
TEL: 415.434.9100

*Attorneys for Defendants and Appellees
Swift Transportation Co. of Arizona, LLC and Swift Transportation Company*

**CORPORATE DISCLOSURE STATEMENT**

Appellee Swift Transportation Co. of Arizona, LLC has as its sole member Appellee Swift Transportation Company, LLC.  Appellee Swift Transportation Company, LLC has as its sole member Knight-Swift Transportation Holdings, Inc., which is a publicly traded company.

**TABLE OF CONTENTS**

INTRODUCTION ....................................................................................1

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF ISSUES PRESENTED FOR REVIEW .....................2

STATEMENT OF THE CASE..................................................................2

    A.    Facts ...............................................................................................2

    B.    *Burnell v. Swift* .............................................................................3

    C.    *Rudsell v. Swift* ............................................................................5

    D.    Settlement and Consolidation of *Burnell* and *Rudsell* .......................6

    E.    First Settlement Approval Proceedings.................................................9

    F.    Mares' First Appeal.......................................................................10

    G.    Second Settlement Approval Proceedings and the Present Appeal......................................................................................11

SUMMARY OF ARGUMENT .................................................................15

ARGUMENT ...........................................................................................17

    A.    The District Court Did Not Abuse Its Discretion In Finding That The Settlement Was The Product Of Arms' Length Adversarial Negotiations.......................................................................18

        1.    Saucillo and Rudsell's Counsel Were Capable Adversaries...........................................................................19

        2.    The Settlement Does Not Contain a Problematic "Clear-Sailing Arrangement" ................................................................22

    B.    The Released Claims Are Not Overbroad...........................................25

    C.    The District Court Had An Adequate Basis To Conclude That The Settlement Is Fair, Reasonable, And Adequate ..........................28

CONCLUSION ........................................................................................35

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

<u>FEDERAL CASES</u>

*Allen v. Bedolla*
    787 F.3d 1218 (9th Cir. 2015) ....................................................................23, 24

*Alvarez v. Hill*
    518 F.3d 1152 (9th Cir. 2008) ...........................................................................27

*Alvarez v. XPO Logistics Cartage, LLC*
    2021 WL 4057248 (C.D. Cal. 2021) ...............................................................30

*AMA Multimedia, LLC v. Wanat*
    970 F.3d 1201 (9th Cir. 2020) ...........................................................................26

*In re Anthem, Inc. Data Breach Litig.*
    327 F.R.D. 299 (N.D. Cal. 2018)......................................................................20

*Ayala v. U.S Xpress Enterprises, Inc.*
    2019 WL 1986760 (C.D. Cal. 2019) ................................................................30

*Ayala v. U.S. Xpress Enterprises, Inc.*
    851 F. App'x 53 (9th Cir. 2021) .......................................................................31

*In re Bluetooth Headset Prod. Liab. Litig.*
    654 F.3d 935 (9th Cir. 2011) ..........................................................17, 18, 21, 22

*Cole v. CRST, Inc.*
    2017 WL 1234215 (C.D. Cal. 2017) ................................................................29

*Connell v. Heartland Express, Inc.*
    2020 WL 813022 (C.D. Cal. 2020) .................................................................30

*Fischel v. Equitable Life Assur. Soc'y of U.S.*
    307 F.3d 997 (9th Cir. 2002) ..........................................................14, 18, 25

*Hanlon v. Chrysler Corp.*
    150 F.3d 1011 (9th Cir. 1998) .......................................................14, 20, 22

*Henry v. Cent. Freight Lines, Inc.*
    2019 WL 2465330 (E.D. Cal. 2019)................................................................30

*Hesse v. Sprint Corp.*
  598 F.3d 581 (9th Cir. 2010) .............................................................25

*Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*
  986 F.3d 841 (9th Cir. 2021) .............................................................30

*Lane v. Facebook, Inc.*
  696 F.3d 811 (9th Cir. 2012) .............................................................28

*Mares v. Swift Transportation Co. of Arizona*
  LLC, 2018 WL 6928455 (C.D. Cal. 2018)........................................29

*Marino v. Ortiz*
  484 U.S. 301 (1988).............................................................................26

*Nachshin v. AOL, LLC*
  663 F.3d 1034 (9th Cir. 2011) ...........................................................17

*Nash v. Horizon Freight Sys., Inc.*
  2020 WL 4284820 (N.D. Cal. 2020)..................................................30

*Officers for Justice v. Civil Service. Commission of City & County of San Francisco*
  688 F.2d 615 (9th Cir. 1982) .......................................................17, 29

*In re Osborne*
  76 F.3d 306 (9th Cir. 1996) ...............................................................23

*Paul, Johnson, Alston & Hunt v. Graulty*
  886 F.2d 268 (9th Cir. 1989) .................................................14, 18, 25

*Pavloff v. Cardinal Logistics Mgmt. Corp.*
  2020 WL 6828902 (C.D. Cal. 2020) .................................................30

*Robinson v. Chefs' Warehouse, Inc.*
  2019 WL 4278926 (N.D. Cal. 2019) .................................................30

*Rodriguez v. W. Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) .................................................18, 23, 26

*Roes, 1-2 v. SFBSC Mgmt., LLC*
  944 F.3d 1035 (9th Cir. 2019) ....................................................passim

*Sales v. United Road Services, Inc.*
    2020 WL 4035072 (N.D. Cal. 2020) ...................................................30

*Salter v. Quality Carriers, Inc.*
    2021 WL 5049054 (C.D. Cal. 2021) ..................................................30

*Saucillo v. Peck*
    25 F.4th 1118 (9th Cir. 2022) ..........................................10, 11, 17, 26

*Valiente v. Swift Transportation Co. of Arizona, LLC*
    2021 WL 1799808 (C.D. Cal. 2021) .................................................30

*Vargas v. Lott*
    787 F. 787 F. App'x 372, 374 (9th Cir. 2019)....................................18

## STATE CASES

*Oman v. Delta Air Lines, Inc.*
    9 Cal. 5th 762 (2020) .......................................................................30

## DOCKETED CASES

*Edward Bouissey v. Swift Transportation*
    C.D. Cal. Case No. 2:19-cv-03203-VAP-KK ...................................21

*Johel Valiente v. Swift Transportation*
    C.D. Cal. Case No. 2:19-cv-04217-VAP-KK ...................................21

*Rafael McKinsty v. Swift Transportation*
    C.D. Cal. Case No. 5:15-cv-01317-VAP-SP...............................19, 20

*Sadashiv Mares v. Swift Transportation*
    C.D. Cal. Case No. 2:15-cv-07920-VAP-KK .............................19, 21

*Thor Nilsen v. Swift Transportation*
    C.D. Cal. Case No. 5:15-cv-02504-VAP-KK ...................................21

## FEDERAL: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS

28 U.S.C. § 1291 ....................................................................................2

28 U.S.C. § 1332(d) ...............................................................................1

28 U.S.C. § 1367 ...................................................................................2

49 U.S.C. § 31141 ................................................................................29

*California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers*, 83 Fed. Reg. 67,470 (Dec. 28, 2018) ......................................30

Fed. R. Civ. P 23(e)(2) .......................................................................15

Fed. R. Civ. P. 23(f) .............................................................4, 5, 20, 21

Fed. R. Civ. P. 30(b)(6) .........................................................................4

<u>STATE: STATUTES, RULES, REGULATIONS, CONSTITUTIONAL PROVISIONS</u>

Cal. Lab. Code § 2699(l)(2) ..................................................................9

Cal. Labor Code § 226.8 .....................................................................27

California Private Attorneys General Act of 2004 .................................2

**INTRODUCTION**

This appeal is Objector Sadashiv Mares' second attempt in this Court to derail a $7,250,000 settlement reached at arms-length following nearly a decade of hard fought litigation with no end in sight. Mares fails to carry his heavy burden of demonstrating that the district court abused its discretion in approving the parties' settlement for a second time. The district court's second approval order carefully scrutinized the settlement, and Mares does not dispute that this time the court applied the correct legal standards. Instead, Mares nitpicks erroneous theories regarding the number of class members and workweeks, which the district court already determined are, "clearly incorrect." The district court analyzed all of the potential signs of collusion the Ninth Circuit has identified and found that the settlement was the product of arms-length negotiation and fair, reasonable and adequate.

Because Mares sets forth no basis for finding an abuse of discretion, the district court's judgment should be affirmed.

**STATEMENT OF JURISDICTION**

The district court had jurisdiction over Plaintiffs Gilbert Saucillo and James Rudsell's class claims under 28 U.S.C. § 1332(d) (Class Action Fairness Act). The district court had jurisdiction over Saucillo and Rudsell's claims arising under the

California Private Attorneys General Act of 2004 (PAGA) pursuant to 28 U.S.C. § 1367 (supplemental jurisdiction).

The Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Mares' appeal presents the following issue: Did the district court abuse its discretion in approving the parties' settlement as fair, reasonable and adequate?

## STATEMENT OF THE CASE

### A. Facts

Defendant Swift Transportation Company of Arizona, LLC is a national commercial motor carrier that transports freight throughout the continental United States.[1] Defendants-Appellees' Supplemental Excerpts of Record (SER) 3-SER-557. During the relevant time period, Swift compensated some of its employee drivers on a per-trip piece-rate basis. *Id.* To calculate trip pay Swift considered the time it takes to perform all necessary tasks, including rest breaks. *Id.*; 3-SER-SER-563, 3-SER-565.

In addition to trip pay, Swift paid its drivers many forms of additional pay where more time may be needed to complete a trip. 3-SER-559. During the

---

[1] "Swift Transportation Company" is also named as a defendant in the consolidated complaint and judgment. 1-ER-4, 2-ER-262. Swift Transportation Company, LLC is an intermediate holding company that does not employ truck drivers.

relevant time period, Swift paid at least 29 types of additional pay separate from trip pay, ten of which were paid at an hourly rate. *Id.*, 3-SER-567-570.

**B.     *Burnell v. Swift***

Plaintiff John Burnell, a former Swift employee driver, filed a putative class action against Swift in California state court on March 22, 2010. 3-ER-413-433; *John Burnell v. Swift Transportation Co. of Arizona, LLC*, CIVDS 1004377, 5:10-cv-00809-VAP-OP. Swift removed *Burnell* to the Central District of California on June 2, 2010 pursuant to the Class Action Fairness Act of 2005 (CAFA). 3-ER-390-409. Burnell eventually filed a second amended complaint adding two additional former Swift employee drivers as named plaintiffs and putative class representatives: Gilbert Saucillo and Jack Pollock. 3-ER-329-349.

The *Burnell* second amended complaint asserted the following claims for relief arising under California state law: 1) Recovery of Unpaid Minimum wages; 2) Failure to Provide Meal and Rest Periods; 3) Failure to Indemnify; 4) Failure to Timely Furnish Accurate Itemized Wage Statements; 5) Unlawful Pay Instruments; 6) Failure to Timely Pay All Earned Final Wages; 7) Unfair Competition; and 8) Civil Penalties. 3-ER-337-348. The first seven claims for relief were asserted on behalf of putative classes consisting of current and former employee drivers of Swift in California. 3-ER-334-335, 3-ER-337-346. The eighth claim for relief asserted non-class representative claims under PAGA on behalf of the same group

of drivers. 3-ER-346-348. The claims in the second amended complaint were premised on allegations that Swift's mileage-based piece-rate compensation system failed to pay for non-driving time and for time spent on rest periods, that Swift failed to provide meal and rest periods required by California law, that Swift failed to reimburse drivers for business expenses they incurred in the course of their employment, and that Swift's use of "Comdata" pay cards constituted payment of wages with an unlawful instrument. 3-ER-330-331, 3-ER-337-348.

During the course of the *Burnell* litigation, Swift responded to substantial written discovery and produced over one million pages of documents. 1-SER-121-122, 1-SER-142-143. The *Burnell* plaintiffs also responded to substantial written discovery propounded by Swift. *Id.* The parties conducted at least fourteen depositions, including numerous depositions of Swift under Fed. R. Civ. P. 30(b)(6). 1-SER-142-143. The parties held multiple meetings and informal conferences where they exchanged information and theories of the case. *Id.*

Burnell and Saucillo moved for class certification on January 22, 2016. 1-SER-121, 4-SER-824-1112. The district court denied Burnell and Saucillo's motion on May 4, 2016. 3-ER-310-327. On May 18, 2016, Burnell and Saucillo petitioned this Court for review of the district court's order denying class certification under Fed. R. Civ. P. 23(f). Ninth Cir. Case No. 16-80070, Dkt. 1.

-4-

The Court denied Burnell and Saucillo's petition for interlocutory review on July 18, 2016. *Id.* at Dkt. 10.

**C.    *Rudsell v. Swift***

Plaintiff James Rudsell filed a putative class action against Swift in California state court on January 10, 2012. Appellant's Motion for Judicial Notice (JN) JN-177-195. *James Rudsell v. Swift Transportation Co. of Arizona, LLC*, CIVDS 1200255, 5:12-cv-00692-VAP-OP. Rudsell filed a first amended complaint in state court on March 28, 2012. JN-153-175. Swift removed the *Rudsell* case to the Central District of California on May 3, 2012 under CAFA. JN-136-151.

The *Rudsell* first amended complaint sought to represent "California based drivers" employed by Swift and asserted California state law claims for relief for 1) Failure to Pay Minimum Wages; 2) Failure to Provide Meal Periods or Compensation in Lieu Thereof; 3) Failure to Provide Rest Periods or Compensation in Lieu Thereof; 4) Failure to Timely Pay Wages; 5) Failure to Provide Accurate Employee Itemized Wage Statements; 6) Violations of the California Unfair Competition Laws; and 7) Private Attorneys' General Act of 2004, Labor Code § 2698, *et. seq.* JN-159-160, JN-163-170. Like in *Burnell*, Rudsell's claims are premised on allegations that Swift's mileage-based compensation system failed to pay drivers for all hours worked and that Swift

failed to provide meal and rest periods required by California law.  JN-157-159,

JN-163-170.

On April 29, 2013, the district court ordered *Rudsell* stayed pending

resolution of the overlapping *Burnell* case.  JN-123.  Prior to the stay, the parties in

*Rudsell* engaged in a round of discovery.  1-SER-121.

### D.     Settlement and Consolidation of *Burnell* and *Rudsell*

The parties to *Rudsell* and *Burnell*, the first two filed cases, attended a full

day mediation with experienced and respected wage-and-hour mediator Mark

Rudy on April 23, 2018.  1-SER-122, 1-SER-139.  The parties were unable to

reach a settlement at mediation, but continued their discussions through Mr. Rudy.

*Id.*  More than a year later, after continued negotiations, and further assistance

from Mr. Rudy, the parties were able to come to an agreement to resolve all of the

outstanding PAGA and class claims asserted in *Burnell* and *Rudsell*.  *Id.*

Swift, Saucillo, and Rudsell executed a written class settlement agreement

on May 2, 2019 (the Settlement or Settlement Agreement).[2]  1-SER-138-172.  The

Settlement obligates Swift to pay $7,250,000.00 in exchange for a complete release

of "all claims arising from or related to the facts and claims alleged in [*Burnell* and

---

[2] John Burnell and Gilbert Saucillo are both named plaintiffs in the *Burnell* case,
but Burnell is not a party to the Settlement Agreement.  3-ER-329, 1-SER-138.
Burnell was deposed in the litigation and was actively involved, but at the time of
execution of the Settlement Agreement could not be located.  3-SER-572, 3-SER-

*Rudsell*], or that could have been raised in [*Burnell* and *Rudsell*] based on the facts and claims alleged" arising during the Settlement Class Period.  1-SER-146-147, 1-SER-151.  The Settlement defines the "Settlement Class Period" as "the time period beginning March 22, 2006 through January 31, 2019."  1-SER-140.  It also defines "Plaintiffs" to include "all drivers employed by [Swift] to perform work in the State of California and who earned mileage-based compensation during the Settlement Class Period," and "Class Member" to mean "any of the Plaintiffs who have not requested exclusion from the Settlement."  *Id.*  The Settlement estimates that "there were approximately 19,000 Plaintiffs as of the date of the mediation [April 23, 2018] who worked approximately 850,000 workweeks in the Settlement Class Period."  *Id.*

The Settlement Agreement allocated $2,416,666.66 to Class Counsel for attorneys' fees (which were reduced by the district court), $100,000.00 to Class Counsel for litigation costs, $10,000.00 incentive awards to Saucillo and Rudsell, $100,000.00 for settlement administration costs, $500,000.00 to the PAGA claims, and the remaining $4,123,333.34 to the class claims.  1-SER-151-152, 1-ER-32-33.  Pursuant to Cal. Lab. Code § 2699(i), 75% of the PAGA amount is set to be distributed to the LWDA, and 25% is to be paid to the class.  1-SER-152.  The

---

661-713.  Jack Pollock withdrew as a class representative in the *Burnell* case on August 23, 2013, prior to settlement negotiations.  4-SER-1110

Settlement is non-revisionary and does not require any class member to make a claim to receive an award.  1-SER-151, 1-SER-153.

To facilitate approval of the Settlement Agreement, the parties stipulated to consolidation of *Burnell* and *Rudsell*.  2-ER-258-260.  On June 7, 2019, the district court ordered *Burnell* and *Rudsell* consolidated, and Sacuillo and Rudsell filed a consolidated complaint on the same date.  *Id.*; 2-ER-262-282.  The consolidated complaint asserts claims on behalf of a putative class defined as: "All Drivers and other similarly-titled employees with similar job duties employed by [Swift] to perform work in the State of California who earned mileage based compensation between March 22, 2006 through January 31, 2019."  2-ER-268.  The consolidated complaint asserts claims for 1) Recovery of Unpaid Minimum Wages; 2) Failure to Provide Meal and Rest Periods; 3) Failure to Indemnify; 4) Failure to Timely Furnish Accurate Itemized Wage Statements; 5) Unlawful Payment Instruments; 6) Failure to Pay All Earned Final Wages; 7) Unfair Competition; and 8) Civil Penalties.  2-ER-271-282.  The first seven claims for relief in the consolidated complaint are alleged on a class basis, and the eighth claim for relief arises under PAGA.  *Id.*  The claims in the consolidated complaint (including the PAGA claim) are based on the same allegations in the prior complaints filed by Sacuillo and Rudsell.  1-SER-146-147, 2-ER-264-265, 2-ER-271-281, 3-ER-330-331, 3-ER-337-348, JN-157-159, JN-163-170.

## E.    First Settlement Approval Proceedings

On June 5, 2019, Saucillo and Rudsell submitted a copy of the Settlement to the California LWDA as required by Cal. Lab. Code § 2699(l)(2).  2-SER-315. After over three years, the LWDA has never objected to or otherwise commented on the Settlement.  1-ER-18-19, 3-ER-445-529.

On August 16, 2019, the district court conditionally certified the proposed settlement class and preliminarily approved the Settlement as fair, reasonable, and adequate.  2-ER-221-235.  The district court's order defined the settlement class as "[a]ll drivers employed by [Swift] to perform work in the State of California and who earned mileage-based compensation during the period March 22, 2006 to January 31, 2019."  2-ER-233.  Before granting preliminary approval, the district court requested additional information from the parties regarding the elements of class certification and the overall fairness of the settlement, which was provided in a supplemental brief and declarations.  2-ER-255-256, 2-SER-475-556.  The district court's preliminary approval order set October 18, 2019 as the last day for class members to submit objections.  2-ER-234

On August 23, 2019, notice was distributed to the 19,544 drivers who satisfied the settlement class definition.  2-ER-205.  On January 9, 2020, the district court gave final approval to the Settlement, with a few modifications.  2-ER-075-100.  Most notably, the district court reduced the fees requested by Class

-9-

Counsel by $604,166.66 to 25 percent of the gross settlement amount ($1,812,500.00) and reduced the requested litigation expenses from $67,551.61 to $61,630.48. 2-ER-95-96. After deductions for the approved fees, costs, incentive awards and the LWDA's share of the PAGA portion of the Settlement there is $5,140,869.52 available for distribution to the class. 2-ER-95-99, 2-SER-151-152. In connection with the briefing on final approval, Swift filed a declaration from its Director of Payroll stating under penalty of perjury that there were 19,544 class members and 847,503 weeks worked by the settlement class during Settlement Class Period. 2-ER-199-201.

Mares filed objections to settlement approval and appeared through counsel at the final fairness hearing. 2-ER-101-102, 2-ER-134-137, 2-ER-208-217, 2-ER-237-241. The district court considered Mares objections and overruled them. 2-ER-84-85. The district court entered judgment on February 10, 2020. 2-ER-70-72.

## F.    Mares' First Appeal

Mares and another objector, Lawrence Peck, appealed from the February 13, 2020 judgment. Dist. Court Dkt. 248, 250; Ninth Cir. Case Nos. 20-55119, 20-55159. On February 11, 2022, the Court issued an opinion on both appeals. *Saucillo v. Peck*, 25 F.4th 1118 (9th Cir. 2022). The Court dismissed Peck's appeal on the ground that his objections were limited to the PAGA portion of the

settlement, and he was not a party to district court proceedings as to the PAGA claims. *Id.* at 1126-29. With respect to Mares' appeal, the Court found that the district court's approval order misstated the applicable legal standard in one respect. *Id.* at 1030-334. The Court held that the district court erred in applying a presumption of fairness to the settlement and should have employed the "heightened standard" of scrutiny applicable to settlements reached prior to class certification. *Id.*; *see also Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). The Court therefore vacated the district court's approval of the Settlement and remanded for further proceedings. *Saucillo*, 25 F.4th at 1133. The Court stated: "We offer no opinion as to whether there is merit to Mares's allegations. On remand, the district might decide to once again approve the settlement pursuant to the correct legal standard, or it might not. We, however, cannot review the settlement in the first instance under the appropriate legal standard." *Id.*

G.     **Second Settlement Approval Proceedings and the Present Appeal**

On March 8, 2022, the district court ordered Swift, Saucillo, and Rudsell "to file briefing regarding how the Court should interpret and apply the Ninth Circuit's February 11, 2022 Order." 1-SER-078. The district court's order did not reopen the time for class member objections that expired on October 19, 2019, or give any objector leave to file a response. *Id.* Swift, Saucillo, and Rudsell submitted a joint

brief on March 25, 2022, asking the district court to reapprove the Settlement. 1-SER-002-075.

Without any authorization to do so, Mares and Peck each filed new objections. 2-ER-39-47, Dist. Court Dkt. 275. Mares' objections asserted that there are six "red flags" that the district court should scrutinize. 2-ER-40-47. The "red flags" that Mares alleged are: 1) "Swift Picked Rudsell's Counsel to Initiate Negotiations;" 2) "This Class Settlement Was Made After Certification Was Denied;" 3) "This Settlement Agreement Contained a Clear Sailing Provision;" 4) "The Settlement Agreement Settles New and Unlitigated Claims;" 5) "The $211 Million Exposure Estimate Is Based on Air and Bad Arithmetic;" and 6) "The True Number of Class Members is Completely Unknown." *Id.* Mares' complaint that the settlement released "new" claims was not raised in his earlier objections filed prior to the October 19, 2019 deadline. 2-ER-208-217, 2-ER-237-241. All of Mares' other objections had been previously raised with and rejected by the district court. *Id.*, 2-ER-84-85, 2-ER-232-233.

On April 28, 2022, the district court issued an order reapproving the Settlement. 1-ER-7-36. The Court's second final approval order states:

> "When 'the parties negotiate a settlement agreement before the class has been certified, settlement approval 'requires a higher standard of fairness' and 'a more probing inquiry than may normally be required under Rule 23(e).'' *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012). Because a class was not certified prior to the

-12-

parties' settlement, the Court applies a "higher standard" and conducts a "more probing inquiry" in evaluating the fairness of the Settlement Agreement. Further, the Court neither presumes the Settlement Agreement is fair nor that it is the product of non-collusive, arms-length negotiations in evaluating the applicable factors.

…

"Because the parties signed the Settlement Agreement prior to class certification, it "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011). The Court must perform an "exacting review" and analyze potential "subtle signs of collusion." *Roes*, 944 F.3d at 1049. The Court has carefully scrutinized the Settlement Agreement and evidence submitted by the parties and objectors and finds no signs of overt or subtle collusion." 1-ER-11-12.

The district court found that the parties "had tenaciously litigated this case for nearly a decade" and noted that "[o]ver one million pages of documents were produced in discovery, and at least 14 depositions were taken in the long course of this litigation." 1-ER-12. The court found that the parties performed "extensive discovery" and "possessed enough information to make an informed decision about the Settlement Agreement." 1-ER-16-17. The district court also relied on the fact that Saucillo and his counsel had prepared a lengthy motion for class certification and filed a petition for permission to appeal in this Court when it was denied. 1-ER-12.

The district court's order further found that "none of the potential 'subtle signs of collusion' identified by the Ninth Circuit" in *Roes, 1-2 v. SFBSC Mgmt.,*

*LLC*, 944 F.3d 1035 (9th Cir. 2019) "are present in the Settlement Agreement."  1-ER-13.  The district court determined that the approved attorneys' fees are not disproportionate to the recovery, because they are equal to the 25% "benchmark" used by the Ninth Circuit.  *Id.*; *see*, *e.g.*, *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1006 (9th Cir. 2002); *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  The district court observed that there is no possibility of a reverter of any of the settlement funds to Swift, and "the Settlement Agreement does not contain the type of 'clear sailing arrangement' that is cause for concern . . . . Under the Settlement Agreement, approved attorneys' fees are paid from a fixed Gross Settlement Amount, and Defendants' obligations are not affected by the amount of fees awarded."  1-ER-13-14.  Thus the district court found "that parties engaged in arm's length, serious, informed, and non-collusive negotiations."  1-ER-14. The court stated that it "reaches this conclusion based on the evidence submitted by the Parties and an exacting review of the settlement terms, not through application of any presumptions."  *Id.*

The district court's second approval order then analyzes all of the factors set forth in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) for analyzing approval of a class action settlement, and finds that each one weighs in favor of approval.  1-ER-14-24.  The district court rejected Mares' argument that Saucillo and Rudsell's exposure analysis was "unsupported," because "the parties

-14-

proffer evidence that directly contradicts [Mares'] position. For instance, Defendants' director of payroll Robin Rohwer states her review of corporate records showed 'that there were 847,503 weeks worked by Swift California employee drivers earning mileage-based trip pay from March 22, 2006 through January 31, 2019.' (Dkt 221 ¶ 4). Thus, Mares' argument that estimating wage claim exposure based on a total of 850,000 workweeks is 'whimsical' is plainly wrong."[3]  1-ER-21.

The district court therefore concluded that the Settlement is fair, reasonable, and adequate, and granted approval. 1-ER-24, 1-ER-36. Judgment was entered on April 29, 2022, and Mares and Peck both appealed for a second time. 1-ER-003-005, Dist. Court Dkt. 279, 281. On October 4, 2022, Peck's appeal was dismissed for failure to prosecute after Peck failed to file an opening brief. Ninth Cir. Case No. 22-55468 Dkt. 11.

## SUMMARY OF ARGUMENT

The district court did not abuse its discretion in approving the parties' settlement a second time. The district court was explicit that it did not presume the Settlement is fair and subjected it to a "higher standard." 1-ER-11, 1-ER-14. The district court addressed all of the potential "subtle signs of collusion" the Ninth

---

[3] In a footnote, the district court reached the same conclusion that the settlement is fair reasonable and adequate under the factors set forth in Fed. R. Civ. P 23(e)(2) as amended in 2018 as it did under the *Hanlon* factors. 1-ER-24.

Circuit has held may exist in a pre-certification class action settlement, and found that none were present. 1-ER-11-14. The district court then weighed all of the relevant factors in accordance with Ninth Circuit precedent, and concluded that the settlement was fair, reasonable, and adequate. 1-ER-14-24, 1-ER-36.

The six alleged "red flags" that Mares identifies as signs of collusion are identical to those he raised with the district court. 2-ER-40-47. The district court weighed the evidence in light of Mares' objections and concluded that the settlement was reached at arms' length and was not the product of collusion. 1-ER-11-14. The district court addressed Mares' contention that the parties' representations as to the number of relevant workweeks was "unsupported," and found that that evidence established that Mares' claims are "plainly wrong." 1-ER-21.

Mares' claim that the Settlement releases claims that were not litigated was not timely raised, and is not true. The Settlement's release is limited to claims "arising from or related to the facts and claims alleged in [*Burnell* and *Rudsell*], or that could have been raised in [*Burnell* and *Rudsell*] based on the facts and claims alleged," and the consolidated complaint did not add any claims that were not already asserted in *Burnell* and *Rudsell*. 1-SER-146-147, 2-ER-264-265, 2-ER-271-281, 3-ER-330-331, 3-ER-337-348, JN-157-159, JN-163-170. Furthermore, the only specific claims that Mares alleges were added to the consolidated

-16-

complaint are PAGA claims, and this Court already held in the prior appeal that a class settlement objector is not a party to the district court proceedings as to any PAGA claims, and therefore may not appeal approval of a PAGA settlement. *Saucillo*, 25 F.4th at 1126-29.

Mares provides no basis for this Court to second guess the district court's conclusions and find an abuse of discretion. The judgment should be affirmed.

## ARGUMENT

The Court of Appeals reviews a district court's approval of a class action settlement for abuse of discretion. *Nachshin v. AOL, LLC*, 663 F.3d 1034, 1038 (9th Cir. 2011); *see also Officers for Justice v. Civil Service. Commission of City & County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge."). Appellate review of a class action settlement approval order is "extremely limited," and the Court "will affirm if the district judge applies the proper legal standard and his findings of fact are not clearly erroneous." *In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 940 (9th Cir. 2011) (quoting I*n re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir.2000)). The Court will "rarely overturn a proposed settlement based on considerations of substantive fairness unless it is clear that class counsel's self-interest, rather than the class's

interests, influenced the agreement." *Vargas v. Lott*, 787 F. App'x 372, 374 (9th Cir. 2019)

For the reasons below, Mares fails to establish any abuse of discretion.

## A. The District Court Did Not Abuse Its Discretion In Finding That The Settlement Was The Product Of Arms' Length Adversarial Negotiations

The crux of Mares' appeal is a claim that the district court insufficiently scrutinized the Settlement for signs of self-dealing by Saucillo and Rudsell's counsel. This is false. The district court's second final approval order states that the court "carefully scrutinized the Settlement Agreement and evidence submitted by the parties and objectors and finds no signs of overt or subtle collusion." 1-ER-12. The district court went through each of the "subtle signs of collusion" that the Ninth Circuit has identified, and properly found that none were present. 1-ER-13-14; *Roes*, 944 F.3d at 1049. The attorneys' fees approved by the district court are not disproportionate to the class recovery, and are equal to the 25% "benchmark" the Ninth Circuit employs. 1-ER-13, 1-ER-32-33; *Fischel*, 307 F.3d at 1006; *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272. The Settlement is also non-reversionary, and it does not contain the type of 'clear-sailing arrangement' that may indicate collusion. 1-ER-13-14, 1-SER-152-154; *see Bluetooth*, 654 F.3d at 947 ("a clear sailing' arrangement *providing for the payment of attorneys' fees separate and apart from class funds*" may be collusive) (emphasis added); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n. 5 (9th Cir. 2009) (agreement to not contest

-18-

fees paid from a capped settlement fund "does not signal the possibility of collusion"). The district court thus properly found that the "parties engaged in arm's length, serious, informed, and non-collusive negotiations… based on the evidence submitted by the Parties and an exacting review of the settlement terms, not through application of any presumptions." 1-ER-14.

1. Saucillo and Rudsell's Counsel Were Capable Adversaries

The supposed "red flags" indicating self-dealing identified by Mares are not indicative of a collusive settlement, and in any event the district court considered Mares' claims and acted within its discretion in rejecting them. Mares' argument that it is suspicious for Swift to negotiate a settlement with Rudsell's counsel when the *Rudsell* action had laid dormant for an extended period of time ignores that *Rudsell*, like most of the other cases pending against Swift, was stayed pending the outcome in *Burnell*. JN-123-128; *see also Sadashiv Mares v. Swift Transportation*, C.D. Cal. Case No. 2:15-cv-07920-VAP-KK, Dkt. 47; *Rafael McKinsty v. Swift Transportation*, C.D. Cal. Case No. 5:15-cv-01317-VAP-SP, Dkt. 17. Mares' argument is further belied by the fact that Saucillo is a party to the Settlement, and his case (*Burnell*) was vigorously litigated for years. 3-ER-460-528. As noted by the district court, the *Burnell* action had been "tenaciously litigated…for nearly a decade," and "[o]ver one million pages of documents were produced in discovery, and at least 14 depositions were taken in the long course of this litigation." 1-ER-

12, 1-SER-121-122, 1-SER-142-143; *see Hanlon*, 150 F.3d at 1026 ("the extent of discovery completed and the stage of the proceedings" is relevant to fairness of settlement); *see also In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018) ("Extensive discovery is … indicative of a lack of collusion, as the parties have litigated the case in an adversarial manner").  Saucillo's counsel also filed a substantial motion for class certification and filed a petition for permission to appeal after it was denied.  1-ER-12, 1-SER-121, 4-SER-824-1112, Ninth Cir. Case No. 16-80070, Dkt. 1.  There is nothing in the record to suggest that Saucillo and Rudsell's counsel were "ineffectual" or "inadequate" in discharging their obligations to the class.

Mares speculates that Saucillo's counsel were unduly incentivized to accept a "weak" settlement on the ground that they "virtually abandoned their case after this court denied their F.R.C.P. 23(f) petition to review the denial of certification." But Mares completely ignores the substantial litigation that occurred prior to denial of class certification and the district court's finding that Saucillo's counsel performed "extensive pre-certification discovery" and "possessed enough information to make an informed decision about the Settlement Agreement."[4]  1-

---

[4] Mares states without citation that multiple other pending "parallel" putative class actions against Swift were being "vigorously pursued," while *Burnell* and *Rudsell* were quiet.  Not so.  Most of the other actions against Swift that Mares refers to were either settled on an individual basis or in their infancy at the time of the Settlement.  *See*, *e.g.*, *Rafael McKinsty v. Swift Transportation*, C.D. Cal. Case No.

ER-16-17, 3-ER-460-528, 1-SER-121-122, 1-SER-142-143. Mares also ignores

that the Settlement was reached with the assistance of an experienced wage and

hour mediator, and that the parties haggled over the terms for a year before finally

reaching a deal. 1-SER-122, 1-SER-139; *see Bluetooth*, 654 F.3d at 948 (the

presence of a neutral mediator is "a factor weighing in favor of a finding of non-

collusiveness"). The extended negotiations following a day of failed mediation is

not consistent with Mares' characterization of Saucillo's counsel as attorneys

desperate to take any deal.

It is of course true that the denial of class certification and the Rule 23(f)

petition was a significant blow to Saucillo's chances of obtaining a large class

recovery with further litigation, but there is no legal rule that a putative class

representative cannot settle a weak case.[5] Indeed, the "strength of the plaintiffs'

---

5:15-cv-01317-VAP-SP, Dkt. 71 (dismissed pursuant to settlement); *Thor Nilsen v. Swift Transportation*, C.D. Cal. Case No. 5:15-cv-02504-VAP-KK, Dkt. 39 (dismissed pursuant to settlement); *Edward Bouissey v. Swift Transportation*, C.D. Cal. Case No. 2:19-cv-03203-VAP-KK (filed 6 months prior Settlement 2019); *Johel Valiente v. Swift Transportation*, C.D. Cal. Case No. 2:19-cv-04217-VAP-KK (filed seven months prior to Settlement). The *Burnell* action was by far the most heavily litigated of any of the cases against Swift, and Saucillo's counsel declared that they spent over 2,500 hours on the matter. 1-SER-224.

[5] In Mares' case, at the time of the Settlement, the district court had denied class certification *and* granted summary judgment to Swift on all of Mares' individual claims. *Sadashiv Mares v. Swift Transportation*, C.D. Cal. Case No. 2:15-cv-07920-VAP-KK, Dkt. 79, 110. The parties have not filed dispositive motions in this case, so Mares would be in an even weaker position to negotiate a settlement than Saucillo and Rudsell. 3-ER-460-528.

case" is a factor that the district court must consider in deciding whether to approve a class settlement. *Hanlon*, 150 F.3d at 1026. Nor is there any prohibition on settling a case on a class basis prior to class certification or when certification of a class for litigation purposes has been denied, provided the district court performs an "exacting review" and analyzes all potential "subtle signs of collusion." *Roes*, 944 F.3d at 1049. The district court did so here. 1-ER-11-14.

   2.   The Settlement Does Not Contain a Problematic "Clear-Sailing Arrangement"

Mares' contention that a "clear-sailing" provision in the Settlement is a sign of collusion is incorrect. The Settlement provides for Swift to pay a fixed sum of $7,250,000, regardless of the amount awarded to Saucillo and Rudsell's counsel for fees. 1-SER-151-155. *Bluetooth*, 654 F.3d at 947 holds that "a clear sailing arrangement *providing for the payment of attorneys' fees* **separate** *and apart from class funds*" is potentially indicative of collusion. (emphasis added). There is no specter of collusion from a defendant's agreement to not contest fees up to a certain amount paid *from* the funds available for distribution to the class. The reason that a clear-sailing provision can be problematic is that an agreement to not contest fees is unusual behavior by a defendant *when reducing fees can reduce the amount the defendant will pay*. Thus, such an agreement raises the concern that class counsel bargained away something of value to the class in exchange for defendant's agreement to not oppose fees. But when the defendant pays the same

amount regardless of how much is awarded for fees, this concern is not present. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 961 n. 5 (9th Cir. 2009)

This was made clear in *Rodriguez*, where class objectors attacked a supposed "clear sailing" provision in the settlement identical to the structure of the parties' Settlement in this case. *Rodriguez* noted that fees "were to be made from the settlement fund, capped at $49 million," and held "this scenario does not signal the possibility of collusion because, by agreeing to a sum certain, [defendants] were acting consistently with their own interests in minimizing liability." 563 F.3d at 961 n. 5. As in *Rodriguez*, the "clear sailing" provision that Mares attacks is an agreement whereby Swift would not contest an attorneys' fee request up to a certain amount to be paid from a total settlement fund capped at $7,250,000. Under *Rodriguez*, there is nothing suspicious about such an arrangement, which is standard in nearly every class action settlement for monetary relief.

Mares acknowledges the holding in *Rodriguez*, but argues it was overruled *sub silentio* by *Allen v. Bedolla*, 787 F.3d 1218, 1224 (9th Cir. 2015). *Allen* is not an *en banc* decision and cannot have the effect of overruling *Rodriguez*. *In re Osborne*, 76 F.3d 306, 309 (9th Cir. 1996) ("[A] panel of this court may not overrule a decision of a previous panel; only a court *in banc* has such authority."). In any event, *Allen* is consistent and reconcilable with *Rodriguez*. The settlement in *Allen* provided that the defendant would not contest a fee award of up 25% to be

paid from a $4.5 million common fund, but also provided for a claims procedure and that "all of the money in the settlement fund not paid toward attorneys' fees, administration costs, or to class members who submit claims reverts to" the defendant. *Allen*, 787 F.3d at 1221. Therefore, unlike the Settlement in this case and the one in *Rodriguez*, the amount awarded in fees in *Allen* had an impact on the amount the defendant would ultimately pay out. Because of the claims-made and reversion provisions, the less awarded in fees, the more money defendant stood to keep. It was in this context that *Allen* held that the agreement contained a "clear-sailing arrangement" that constituted a "subtle sign[] of collusion." *Id.* at 1224. But here, the amount Swift pays was fixed regardless of how much in fees the district court approved.

Even if Swift's agreement to not contest a fee award were a clear-sailing arrangement in this context, the presence of such an arrangement and other signs of collusion "does not mean the settlement cannot still be fair, reasonable, or adequate, they required the district court to examine them, and adequately to develop the record to support its final approval decision." *Id.* at 1224. The district court did so here. The court carefully analyzed the Settlement and history of the case and concluded the Settlement was the product of arms-length negotiations and otherwise fair, reasonable, and adequate, despite Swift's agreement to not contest Saucillo an Rudsell's counsel's requested fees up to a fixed amount. 1-ER-11-24.

-24-

Indeed, the district court reduced the fees from the amount requested to 25% of the class recovery, which the Ninth Circuit has approved as an appropriate "benchmark" for fee awards in class actions. 1-ER-13, 1-ER-32-33; *Fischel*, 307 F.3d at 1006; *Paul, Johnson, Alston & Hunt*, 886 F.2d at 272.

The district court did not abuse its discretion in concluding that the Settlement was the product of arms-length negotiations and is not tainted by self-dealing or collusion.

## B. The Released Claims Are Not Overbroad

The release in the Settlement is limited to claims "arising from or related to the facts and claims alleged in [*Burnell* and *Rudsell*], or that could have been raised in [*Burnell* and *Rudsell*] based on the facts and claims alleged." 1-SER-147; *see Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (class settlement may release claims "based on the identical factual predicate as that underlying the claims in the settled class action.") Mares does not take issue with the scope of the release, but claims that the consolidated complaint filed by Saucllio and Rudsell added "new claims" that were not litigated and therefore constitutes a "red flag."

Mares forfeited this argument by not timely raising it in the district court. The first time Mares asserted that the consolidated complaint added "new claims" was in 2022 following remand after the first appeal; well after the October 18, 2019 deadline to file objections. 2-ER-40-47, 2-ER-208-217, 2-ER-237-241, 2-

-25-

ER-234.  The district court did not reopen the time for objections or give Mares

leave to file anything when it reconsidered approval of the Settlement.  1-SER-078;

*see Rodriguez*, 563 F.3d at 967 n. 10 (district court has discretion to set deadline

for filing class settlement objections).  Having failed to timely assert that "new

claims" were added to consolidated complaint in the district court, Mares cannot

advance this argument on appeal.  *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201,

1213 (9th Cir. 2020) ("Absent exceptional circumstances, we generally will not

consider arguments raised for the first time on appeal . . . .").

Additionally, the only "new claims" Mares claims were added to the

consolidated complaint are in the PAGA cause of action.  But this Court already

held in the first appeal in this case that a class settlement objector is not a party to

the district court proceedings as they relate to PAGA claims, and therefore cannot

appeal from approval of a release of PAGA claims.  *Saucillo*, 25 F.4th at 1126-29;

*Marino v. Ortiz,* 484 U.S. 301, 304 (1988) ("The rule that only parties to a lawsuit,

or those that properly become parties, may appeal an adverse judgment, is well

settled.").

Even if the Court were to consider Mares' argument that the consolidated

complaint added "new claims," the argument has no merit.  Each claim for relief

pleaded in the consolidated complaint was previously alleged in either the second

amended complaint filed in *Burnell* or the first amended complaint filed in *Rudsell*.

1-SER-146-147, 2-ER-264-265, 2-ER-271-281, 3-ER-330-331, 3-ER-337-348, JN-157-159, JN-163-170. All of those claims were actively litigated by the parties. 1-SER-121-122, 1-SER-142-143. Mares identifies several *statutes* cited in the Consolidated complaint's PAGA claim for relief that were not expressly identified in the prior complaints, but the underlying *claims* are identical. *See Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("Notice pleading requires the plaintiff to set forth in his complaint *claims for relief*, not causes of action, statutes or legal theories.") (original emphasis). In fact, almost all of the statutes Mares' identifies make it unlawful to fail to pay wages and/or provide for penalties for the non-payment of wages, which is the gravamen of Saucillo and Rudsell's allegations.

The only statute cited in the consolidated complaint that Mares specifically discusses is Cal. Labor Code § 226.8. This statute makes it unlawful for an employer to willfully misclassify an employee as an independent contractor and imposes civil penalties for violations. But the class in this case is defined as "[a]ll drivers *employed* by [Swift] to perform work in the State of California and who earned mileage-based compensation during" the relevant time period. 2-ER-233, 1-SER-140. (emphasis added). Drivers classified as independent contractors are not included in the class, and there is nothing in the consolidated complaint alleging independent contractor misclassification. 2-ER-262-282. Such claims are not released merely because Cal. Labor Code § 226.8 is included in a long

-27-

boilerplate string cite of statutes in the consolidated complaint's PAGA claim for relief. The Settlement's release is limited to claims "arising from or related to *the facts and claims alleged* in [Burnell and Rudsell], or that could have been raised in [Burnell and Rudsell] based on *the facts and claims alleged*," not claims arising from a stray citation to an irrelevant provision. 1-SER-147 (emphasis added).

Mares' argument that settlement approval should be reversed because of the addition of alleged "new claims" to the consolidated complaint must be rejected for each of these independent reasons.

## C.  The District Court Had An Adequate Basis To Conclude That The Settlement Is Fair, Reasonable, And Adequate

Mares' confused attacks on the veracity of the evidence the parties and district court used to measure the potential value of Rudsell and Saucillo's claims have no merit whatsoever.

As an initial matter, the district court was not required to "find a specific monetary value corresponding to each of the plaintiff class's statutory claims and compare the value of those claims to the proffered settlement award." *Lane v. Facebook, Inc.*, 696 F.3d 811, 822 (9th Cir. 2012). Instead, the district court acts properly "in evaluating the strength of the plaintiffs' case in its entirety rather than on a claim-by-claim basis." *Id.* A proposed class settlement "is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators" and "[u]ltimately, the district court's determination is nothing

more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice,* 688 F.2d at 625 (9th Cir. 1982) (quoting *Detroit v. Grinnell Corp.*, 495 F.2d 448, 468 (2d Cir. 1974)). "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Id.* at 628.

In accordance with this settled law, the district court evaluated the Settlement as a whole in light of a reasonably supported estimation of Swift's potential exposure if Sacuillo and Rudsell were to prevail and concluded that the Settlement is fair. 1-ER-16, 2-ER-231-232. Mares ignores the very real possibility that Saucillo and Rudsell may lose on the merits and the class will wind up with nothing. After ten years of litigation the only significant rulings have all been in Swift's favor, and none of the class have received anything. Mares should be aware that the same judge assigned to this case has granted summary judgment on similar claims in other cases, including Mares' own action. *Mares v. Swift Transportation Co. of Arizona*, LLC, 2018 WL 6928455 (C.D. Cal. 2018); *Cole v. CRST, Inc.*, 2017 WL 1234215, at *1 (C.D. Cal. 2017).

Mares also fails to mention that on December 21, 2018, the Federal Motor Carrier Safety Administration (FMCSA) exercised its authority under 49 U.S.C. § 31141 to preempt California's meal and rest break laws as applied to truck drivers subject to the federal hours of service regulations, which in this case is every single

-29-

class member. *California's Meal and Rest Break Rules for Commercial Motor Vehicle Drivers*, 83 Fed. Reg. 67,470 (Dec. 28, 2018); 2-SER-505-544. The FMCSA clarified on March 22, 2019 that its preemption determination is intended to apply to all pending litigation regardless of when the alleged claims arise.[6] 2-SER-546-549. And last year, the Ninth Circuit upheld the validity of the preemption determination against several petitions for judicial review. *Int'l Bhd. of Teamsters, Loc. 2785 v. Fed. Motor Carrier Safety Admin.*, 986 F.3d 841 (9th Cir. 2021).

Additionally, the California Supreme Court issued an opinion on June 29, 2020 that should be fatal to Saucillo and Rudsell's claim that settlement class members' non-driving work was uncompensated. *Oman v. Delta Air Lines, Inc.*, 9 Cal. 5th 762 (2020). *Oman* upheld a compensation system similar to Swift's, and rejected the reasoning that underlies Saucillo and Rudsell's theory that a piece-rate

---

[6] Almost every court to consider the issue has found that the December 21, 2018 preemption determination bars California meal and rest break claims arising both before and after its issuance. *See*, *e.g.*, *Alvarez v. XPO Logistics Cartage, LLC*, 2021 WL 4057248, at *3-4 (C.D. Cal. 2021); *Salter v. Quality Carriers, Inc.*, 2021 WL 5049054, at *9 (C.D. Cal. 2021); *Valiente v. Swift Transportation Co. of Arizona, LLC*, 2021 WL 1799808, at *1-3 (C.D. Cal. 2021); *Connell v. Heartland Express, Inc.*, 2020 WL 813022, at *3 (C.D. Cal. 2020); *Pavloff v. Cardinal Logistics Mgmt. Corp.*, 2020 WL 6828902, at *5 (C.D. Cal. 2020); *Nash v. Horizon Freight Sys., Inc.*, 2020 WL 4284820, at *2 (N.D. Cal. 2020); *Sales v. United Road Services, Inc.*, 2020 WL 4035072, at *3 (N.D. Cal. 2020); *Henry v. Cent. Freight Lines, Inc.*, 2019 WL 2465330, at *4 (E.D. Cal. 2019); *Ayala v. U.S Xpress Enterprises, Inc.*, 2019 WL 1986760, at *3 (C.D. Cal. 2019); *Robinson v. Chefs' Warehouse, Inc.*, 2019 WL 4278926, at *4 (N.D. Cal. 2019).

compensation system based on the estimated miles of a trip necessarily compensates for driving work only.  In *Ayala v. U.S. Xpress Enterprises, Inc.*, 851 F. App'x 53, 54 (9th Cir. 2021), the Court relied on *Oman* to affirm a summary judgment order for a trucking employer where the plaintiff alleged that the employer's mileage-based piece-rate compensation system failed to compensate for non-driving work, which is identical to Saucillo and Rudsell's allegations.  In light of *Oman*, *Ayala*, and *Int'l Bhd. of Teamsters*, the class is fortunate to get anything at all from this litigation.

But Mares urges reversal based on a series of deeply confused and misleading calculations that he claims demonstrate that the number of relevant workweeks and class members is unknown.  There is absolutely no mystery as to the number of relevant workweeks and class members; Mares and his counsel are the only people puzzled on this topic.  The Settlement states that there are approximately 19,000 class members who worked approximately 850,000 weeks during the class period, and these numbers served as the basis for the parties' negotiations.  1-SER-140, 1-SER-153, 2-SER-309-310.  In connection with the approval briefing, Swift filed a declaration under penalty of perjury from its Director of Payroll averring that the class members worked 847,503 weeks during the relevant period.  2-ER-200.  The class administrator submitted a declaration under penalty of perjury that class notice was distributed to 19,544 drivers.  2-ER-

205. These numbers are very close to the estimates set forth in the Settlement. The district court therefore correctly found that "Mares' argument that estimating wage claim exposure based on a total of 850,000 workweeks is 'whimsical' is plainly wrong." 1-ER-21.

Mares' attempt to conjure up inconsistencies between the actual number of workweeks and class members the parties relied on and various representations made in this and another action is based on faulty assumptions and fuzzy math. Mares' claim that the parties represented that there were an "average" of 2,500 drivers employed by Swift is based on a statement made by Saucillo and Rudsell in their preliminary approval motion that used this number as the basis for a rough exposure analysis. 2-SER-373. Mares then claims that the parties later provided a "new estimate of approximately 2,015 drivers," which is based entirely on the parties' supplemental filing in support of preliminary approval estimating that the average number of class members employed by Swift at any given time from approximately 2006 to 2012 was 1,600, and "later" increased to 2,500.[7] 2-SER-252. To come up with his claim that the parties represented there were 2,015 drivers employed on average throughout the class period, Mares assumed that there were 1,600 drivers employed on average for six years and 2,500 drivers employed

---

[7] The fact that the district court requested additional submissions from the parties refutes Mares' position that the district court failed to "investigate" the fairness of the Settlement before approving it. 2-SER-255-256.

-32-

on average for seven years and computed a thirteen year average based on these numbers.

Mares' workweek computations are flawed because he assumes every driver employed by Swift worked 52 weeks and 365 days a year for their entire employment. To indirectly compute the number of workweeks in the class period, Mares simply multiplied the 2,015 average drivers number he came up with by the total number of calendar weeks in the class period. Without the utterly implausible assumption that drivers employed by Swift never take vacation or any time off, not even a single day, Mares' computations fall apart.

Mares also fails to realize that the estimates of the number of drivers employed on average he relies on were derived from declarations filed in support of removal providing estimates for "drivers assigned to terminals in California" or "drivers employed by Swift in California," whereas the certified settlement class is defined as "drivers employed by [Swift] to perform work in the State of California *and who earned mileage-based compensation*." 1-SER-140, 2-ER-233, 2-ER-252, 3-ER-387, JN-133, JN-223. Mares is thus comparing apples and oranges, because the Settlement in this case is limited to employee drivers who earned mileage-based compensation, while the removal declarations provided data for all of

Swift's employee drivers.[8]  Even if Mares' numbers were right, it is not clear what his point is because if the average number of class members employed at any one time in the class period were actually 1,267 as he suggests, then it means Saucillo and Rudsell *overvalued* their claims when they provided an initial exposure analysis based on 2,500 drivers employed on average.

Mares makes the same error when discussing the number of the class members.  Mares cites a declaration filed in support of removal in a different case that stated "Swift employed 20,800 drivers assigned to terminals in California" from September 24, 2013 through August 18, 2017.  JN-223.  But the settlement class is limited to "drivers employed by [Swift] to perform work in the State of California *and who earned mileage-based compensation* during the period March 22, 2006 to January 31, 2019."  2-ER-233, SER-140 (emphasis added).

There are therefore no inconsistencies between the number of workweeks and class members described in the Settlement and declarations in support of approval, and the other representations that Mares identifies.[9]  The parties and the district court know that there are exactly 19,544 class members who worked 847,503 weeks during the relevant period, which is well within the ballpark of the

---

[8] Swift employs many drivers who are paid hourly, rather than under a mileage-based system.

-34-

approximations of 19,000 class members and 850,000 workweeks stated in the Settlement. 1-SER-140, 1-SER-153, 2-SER-309-310, 2-ER-200, 2-ER-205. Even if Mares had identified a conflict in the evidence, that conflict was for the district court to resolve and should not be disturbed on appeal.

The district court did not abuse its discretion in finding the settlement fair, reasonable, and adequate based on the evidentiary record before it.

## CONCLUSION

For all of the reasons set forth above, the Court should affirm the district court's second judgment and order granting final approval to the parties' Settlement.

Dated:  November 18, 2022      SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By      _____
                    */s/ John D. Ellis*
                    PAUL S. COWIE
                    JOHN D. ELLIS
            Attorneys for Appellees
    Swift Transportation Co. of Arizona, LLC and
        Swift Transportation Company

---

[9] Mares has no explanation for how notice was distributed to exactly 19,544 class members, several of whom requested exclusion or submitted objections, if the true number of class members is "unknown." 2-ER-205.

-35-

## STATEMENT OF RELATED CASES

Appellees are aware of the following related case within the meaning of Ninth Circuit Rule 28-2.6, which was not identified in Appellant's Statement of Related Cases:

Sadashiv Mares v. Swift Transportation Co. of Arizona, LLC, No. 19-55065. Appellant Sadashiv Mares appealed from a final judgment and challenges the district court's orders granting summary judgment and denying class certification. Mares' appeal is stayed pending the outcome of this appeal.

Dated: November 18, 2022     SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By        _/s/ John D. Ellis_

PAUL S. COWIE
JOHN D. ELLIS
Attorneys for Appellees
Swift Transportation Co. of Arizona, LLC and
Swift Transportation Company

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 22-55560

I am the attorney or self-represented party.

**This brief contains** | 8,264 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

(•) complies with the word limit of Cir. R. 32-1.

( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

( ) is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ( ) it is a joint brief submitted by separately represented parties;

    ( ) a party or parties are filing a single brief in response to multiple briefs; or

    ( ) a party or parties are filing a single brief in response to a longer joint brief.

( ) complies with the length limit designated by court order dated [            ].

( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | s/ John D. Ellis     **Date** | Nov 18, 2022

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                              *Rev. 12/01/2018*